My name is Gary Singh. I'm here representing Mr. Tapuro. The issue before the court here is dealing with motion to reopen. Mr. Tapuro is a citizen of the Philippines. A petition was filed by his spouse, a U.S. citizen, and he entered into the United States on August 10, 2001 as an immigrant. At the time of entry, he had a package with him that was sealed. The package is given to him by the embassy in Manila. The contents of the package is his medical record and a visa. When he arrives at Honolulu Airport, the package is opened and the inspector at the airport goes through the contents of it. One of the contents is a medical record. He submitted to medical examination. During the examination, the doctor asked him if he had ever used drugs and he admitted to it. So at the point of entry on July 23, 2003, almost two years later, the government decided to place him in deportation because he had admitted using drugs. He had used drugs. He was not using them after he was at friends' parties or what have you. He admitted, yes, that he did use drugs, marijuana, and shabu. But he does not know what... And methamphetamine? That's what he believes, but he does not know what that is. He calls it chapu? I'm sorry? He calls it chapu? Shabu. Shabu. Correct. That is the Filipino term for meth. For methamphetamine? That's my understanding. Yes. And at what time, according to his admissions, when did he cease using drugs? How old was he when he did use the drugs? How frequently did he use the drugs? He was interviewed by ICE Immigration, now they are called Homeland Security Agent. And during the interview, he did indicate how frequently and how often. If I could get the court's attention to the administrative record, page 204. In 204, he is interviewed by Special Agent Sandra Ng on September 6, 2001. During this Q&A, he is not given a Miranda warning. They go through the questions as to getting his name, name of his spouse. Was the Miranda warning required? Well, he's admitted as a green card holder. He was not in custody. I mean, you're not going to go anywhere with that argument. Well, I'm just going to just... You've got some better arguments, by the way. Yes, I do. I just want to throw that out. Okay. Okay. And then also throughout the Q&A, the essential elements of the Philippines law was never stated to him until after he admitted that he did use drugs. There's a question. How long did you use shabu? I started in 1992, and I used it three or two times a year through 1998. The government directs our attention to Section 1182, which I'm sure you've read, that says any alien who admits having committed a violation of any law or regulation of a state, the United States, or foreign country relating to a controlled substance is inadmissible. How do you get around that? Judge, he was never convicted of a... He doesn't have to be. It says admitted. How do you get around that? It doesn't say convicted. Well, before they asked him this question, they should have put him on notice. This is the law. What cases they have to put him on notice under these circumstances? Well, he comes to the United States. He does not know anything about the law. All of a sudden, they're asking him all these questions, and he's being honest. So basically what we are doing is we're punishing him for being honest. No, they're punishing him for admitting using drugs, including methamphetamine. He's not being punished. He's simply being precluded from entry according to the law. I'm not sure how you get around that section. The Ninth Circuit does have a case that had addressed that, and the ruling was that the alien was removed from the United States because he had admitted using drugs. And we have the petitioner take his... At the time of entry, he did not know the laws. He did use drugs in the past. He does not have a conviction. Therefore, he should not be precluded from entry. Yeah, the problem is, though, this is on a motion to reopen, and it's a very discretionary call. And apparently, the BIA decided that this was an appropriate exercise of discretion because of his admission of having used methamphetamine. Is that right? That is correct, Your Honor. But I would also like to point to your attention that the government waited for almost two years after he was admitted. So they're stopped? Well, not really stopped, but here he is. He comes to the United States. He's working. He has a family. And then he's called in. The government also tells us that his failure to depart is a violation of his voluntary departure agreement, and that somehow bars all of this. Your reaction to that is what? There was a case decided by the Ninth Circuit on January 18, 2005, AZARTE versus Ashcroft. AZARTE? Yes, and that tolls the time. And he had filed all the documents accordingly, so that argument does not stand here. So you're saying that, in fact, he did not fail to timely do his voluntary departure? That is correct. He did not depart, but the day after this case came down, and my understanding is this... Well, the case, this is post-arreal law, so that's why. That's correct, Your Honor. He calculated differently, so he's okay on that issue. Right. But if his earlier lawyer in the proceeding against him instituted by the government to his statements, what success would that challenge have had and why? Your Honor, I had had cases like this before Judge Beamer in Honolulu, and what I have done was I have brought in an expert who will come and testify as to how would one know what he or she is smoking. My client claims, yeah, he was smoking shabu. How would he know that was shabu? Could be anything else. And that given case was terminated by the immigration judge, and the Homeland Security did file an appeal, and it is pending. I see. Now, but he was smoking shabu, but also marijuana? Correct. Is marijuana usage also ground for saying that his admission is inadmissible, other than the fact that yours is saying it's admissible, but it doesn't admit anything because he doesn't know what it is? That's correct, Your Honor. But there's no ground for saying it was inadmissible? Well, furthermore, he wasn't even given his rights. He did not know what he was doing. I'm unaware of a case that says under these circumstances that you have to give somebody his rights. Your Honor, he goes to see his physician, his physician asks him all those questions, and he's being honest. The physician asks him, have you ever used drugs? Well, there's a difference between admitting it to the DHS and then actually having a medical exam and talking to his physician. In fact, there might even be some privileges attached to talking to his physician. But the examination is done in order for him to come to the United States, and the physician will do the report to the immigrant visa, and that is sealed. So he does not know what report, what is the contents of the report. So the purpose of this is to communicate with the United States government? Correct. So the government can open it and look at it? Right, and the government has these documents before them in Malaya, the Philippines, before they issue him the visa. So why don't you just stop him there by saying you have had these admissions, therefore you are barred from entry. Instead, they issue him a visa to come here. Well, estoppel doesn't work, and that's what you're trying to characterize this as. Well, Your Honor, the people in the Philippines are extremely poor, and they go through a lot of trouble to come here. They spend lots of money, and upon entry they are told, because you have made these statements, you cannot stay here. It just seems not right. I will reserve my time. All right. Thank you very much, counsel. Mr. Westphal. May it please the Court. I think a couple of things need to be put in perspective procedurally here, particularly considering the original evidentiary hearing decision, which involved the decision to deport him. So a lot of these questions that are being raised by opposing counsels concerning the questioning of Mr. Tupero by the immigration officer, the alleged delay in initiating proceedings and so on, those are all a moot point because they were not appealed, and therefore they're foreclosed because he didn't exhaust his remedies regarding those issues to the Board of Immigration Appeals. So I think the vast majority of the arguments being raised by Mr. Tupero's counsel fall by the wayside for failure to exhaust administrative remedies. A couple of things I think that are important. There is a case that this Court decided to pass with him, a case which has been cited in our brief, which had a very similar timeline and factual scenario to this case. And in that case, there was a period of time which elapsed between the admission of the alien into the United States and eventual deportation proceedings. And as the Court may recall, in that decision, by statute there is a requirement that when the alien enters the country, the Department of Homeland Security is required to take a second look at the alien to determine if he is admissible. And this Court found that the argument being raised by opposing counsel here about the delay from the time of admission until the time of deportation proceedings were initiated, this Court rejected that argument based upon the fact that even though there was a delay, the Department of Homeland Security was required to take a second look to see if the alien was admissible and had a valid visa. In this particular case, essentially what happened is even though Mr. Tupero didn't appeal the underlying merits of his claim, he filed a motion to reopen seeking an adjustment of status based upon his claim that he was married to an American citizen, something that he didn't raise in the Board of Immigration, or excuse me, the Immigration Judge Proceedings in December of 2003. Excuse me. The Immigration Judge. May I interrupt? The video is a little bit awkward. So the case that you just mentioned for one purpose, I'd like you to address for a different purpose, that is to say the past, I'm not sure I can pronounce it right, past Coghlan case. If the question in front of us were, or the questions in front of us included whether his statements, voluntary statements were admissible in a removal proceeding were in front of us, would they be removable? As I read past Coghlan, I think they might not be. That was the answer I was kind of expecting, but he did not. I think if you go back and take a look at past Coghlan, in that particular case, the alien admitted during the psychiatric examination that he had used drugs, and the court found that even though there was not a definition given to the alien for the criminal conduct or the elements of the criminal conduct, nevertheless, the communication by the alien to these psychiatrists that he had used drugs in the past was admissible for the purposes of determining whether or not the alien was inadmissible based upon his prior drug use. But as I read our opinion in past Coghlan, while in that case, one of the statements was admissible, the general principle that we articulated is because, I'll just read from the opinion, because Inspector Myers failed to provide past Coghlan with the definition of the essential elements of the crime of possession and use of marijuana under Philippine law, BIA should not have considered past Coghlan's admission to Inspector Myers. I take it from that that if he is not warned ahead of time what the consequence of his admission is, it's not admissible. Now, that question may or may not be in front of us with the case in its current posture. I recognize that. But if that question were in front of us, as I read past Coghlan, if he's not given a warning, it's not admissible. Do you disagree with that? I think it's intended. Well, I think under the facts of this case, I would disagree for two reasons. Number one, again, the posture of the case, you have the psychiatric examination and the admissions made there. And secondly, when he was interviewed by the immigration officer, if you look at the transcript at pages, I believe it's 207 through 211 of the administrative record, the immigration officer did take the Philippine statutes and present them to Mr. Tapero and told him what the offenses were and what the elements were. But as I read past Coghlan, but as I read the past Coghlan case, it's not whether he's warned whether it was illegal under Philippine law. He needs to be warned as to what the consequence is under American law. They say the consequence with respect to his admissibility into the country. Am I misreading past Coghlan? I don't think. I believe that that's not correct because under the Board of Immigration, excuse me, the services of administrative decisions, all that is required is that the alien receive information or a definition of the offense that's involved along with its elements. That's essentially what is required. I think under the procedures. That may be what DHS requires. That's not what the case that Judge Fletcher is citing to you requires. I mean, really, what's the important consequence is the immigration consequences, isn't it? I mean, he obviously hasn't been prosecuted under Filipino law. He's not convicted. So the important consequence is the immigration consequence. That's correct, Your Honor. I think, though, that, again, this gentleman knew before he came into the country, if you look at the psychiatric report, he admitted that he had had prior drug use, and the psychiatrist asked him if he had stopped, and he said yes, as of some period of time in 1998. And the psychiatrist asked him why. And he told the psychiatrist that it's in the psychiatrist's report as part of the record. He said specifically that the reason he stopped is because his wife told him that if he continued, that he would not be able to come to the United States and he would not be admissible into the country. Now, who are you talking about? Who are you talking about? Who are you talking about now? I'm sorry? Who are you talking about? In the psychiatric… Are you talking about Pascuoco? In the psychiatric examination. You're using he, and I'm simply trying to ask, who are you talking about, Pascuoco or Tapura? Mr. Tapura. Okay. He admitted to the psychiatrist that the reason he stopped using drugs in 1998 was because his wife told him that if he wanted to get into the United States, that he had to stop using them or he would not be admissible into the country. The precise… And that's in the psychiatric report. Yeah, what page is that going to be? Yeah, because that's what it said. Just bear with me for a moment. I apologize to the court. I thought I had it right here marked, and I'm sorry about that. Are you talking about 214? Applicant first used cannabis. He started using, he would use methamphetamine. He stopped using meth after he got married, after he was told by his wife to stop for immigration purposes. That's correct, Your Honor. That's somewhat imprecise. Let me interject here for a moment. That's somewhat imprecise, told by his wife to stop for immigration purposes. Now, you characterized that a couple of different ways. One of the ways in which you said, well, if you don't stop, you can't get in. That, of course, suggests that if you do stop, you can. But, of course, that's not what's here. It just says stop for immigration purposes. Well, maybe that means, you know, if you're an addict when you come in and you've got a crack in your pocket when you show up, maybe that's why. I mean, this is pretty, even if at this level of hearsay we look at this, it's not very precise. What does that actually tell us about his knowledge about what consequence admission of past drug use would have? I think what it tells you that he knows that drug use is a problem for admission into the United States. What is he told when he's told he has to go get a medical report and bring it to the United States to prove his admissibility? Do we know that? I don't have those documents in front of me, Your Honor, and I cannot say exactly what's in the documents. Let me switch gears a little bit. You tell us in your brief that he's ineligible because he's overstayed his voluntary departure date. The other side takes issue with that. Your response is what? My response to that is I understand that this court has taken a position in a couple of cases, including the Barrows case, that the period of voluntary departure is told when a timely motion to reopen is filed before the voluntary departure period expires. I think the position of the Attorney General is contrary to the position of the court. Well, excuse me, counsel, but it doesn't matter if the Attorney General position is contrary to the role that is established in the circuit. The role that is established in the circuit is what applies and what we have to apply. Isn't that correct? And we don't just say, oh, we're going to throw out our prior cases because the Attorney General thinks something else. I understand that, Your Honor. All I want to do is just, for the purposes of the record, is to preserve the issue in terms of understanding. We've preserved it by your argument. Let me ask you another question. The I.J. completely failed to address any of the favorable factors that weighed in Mr. DiPero's favor, and there were quite a few, actually, that do weigh in his favor. Isn't that error under Ninth Circuit law not to even address or consider the favorable factors laying in favor of a motion to reopen? Your Honor, I think in this case the congressional statute enacted by Congress, which says he's barred based upon the prior drug use, is very clear and explicit, and I think that he's deemed inadmissible by the law, so it doesn't matter what the other factors are. Right, but that's not what the I.J. said. That's not what the I.J. said in the January 28th denial of the motion to reopen, which is actually the order that's in front of us, I believe. The I.J. was saying that the behavior could recur and cause respondents to become a danger to the community, but she omitted any reference to all the favorable things that would weigh against that finding. And again, Your Honor, for a motion to reopen, there has to be new evidence, and none of the information or material presented by Mr. Taperro is new evidence. He had been married for five years prior to the initiation of these proceedings. That was the basis for his application for readjustment or his attempt at readjustment, so there's no new facts before the court. Don't we have an argument about ineffectiveness with prior counsel? I don't think that in this particular case Mr. Taperro was aware of his options for the appeal of the I.J. decision. He was handed paper which indicated that he had a right to appeal. Whether he appealed or not, that's his decision with his counsel. I don't think the ineffective assistance of counsel works here because, again, he was aware that he had the right to appeal. This case falls into a broad category of cases, and we see these with factual variations, but we see this all the time where someone is not properly advised by his own counsel. He may also not have been properly advised by the government, but because of his own counsel's failure to take advantage of the rules and procedures that are available to him, all of a sudden drug use that was not admissible comes in with all kinds of bad consequences. Had he been properly advised by the government the first time around, in my view, he may well never have admitted the drug use. Had he been properly advised by counsel the first time around, he could have challenged and excluded the drug use. And we have here someone who used drugs for a discrete period, basically while he was a college student. We have no indication of drug use since 1998. We do have indication of both American spouse, American citizen children, hard work and clear, emphatic, affirmative recommendations by his employer. This case, I have to say, bothers me. It just doesn't quite seem right to me. Do you have a response to that? Yes. Two things. Number one, these arguments or positions that you're indicating in terms of maybe what should have been done below, he had ample opportunity to exhaust his remedies and failed to do so. Well, what I'm saying is he had a lawyer, and his lawyer, as often happens in these cases, wasn't much good. And when you say he had opportunity, what you mean is his lawyer had opportunity, but his lawyer was lousy. So he himself, you know, he hired a lawyer hoping that the lawyer would understand the law. The lawyer doesn't. And, Your Honor, I think that, you know, that's the situation. And as the Supreme Court has indicated in some past cases, the courts are not in the game of advising litigants on how to proceed in their cases. And I think he was represented by counsel. And again, whether the counsel was effective or not, I think it's not the, it's really not the IJ's position to be there giving the alien defense advice during the course of the immigration proceedings. Why not? I mean, it's not a prosecution, is it? I mean, it's not a prosecution. I'm sorry? I said it's not a prosecution. Why shouldn't the IJ give some content or context to what is being asked of the alien? It's not a prosecution. It's not an adverse situation. I agree it's not a prosecution. I agree it's not a prosecution. And in civil cases generally, ineffective assistance of counsel is not a defense or ability to overturn or doesn't give a basis for overturning a civil decision. And I think the same principle should apply here. Well, I share some of Judge Fletcher's concerns about the equities in this particular case. And I've read your manual on what cases that the department deems appropriate for mediation. And I'm just wondering if you have thought about that, given the U.S. citizen life and children and the long past drug use during the college years and no recurrence and nothing but upstanding behavior since then. Have you given any consideration? I think that the Attorney General has foreclosed by that by statute, which is very specific, that the prior drug use bars his admissibility into the country, number one. And then I think number two, in the Paskogan case, these similar equities were involved, and this court ruled that the alien was still inadmissible and upheld the decision to have him deported. But in the Paskogan case, as I recall, the statements were, there were two statements, one of which the court held was admissible. In this case, at least I think, neither of the statements under the controlling rationale of Paskogan, neither statement was admissible had they been timely challenged. I think, Your Honor, that I respectfully disagree because the psychiatric examination that was taken of Mr. Topero is precisely the same psychiatric examination that was involved in Paskogon. And there the court said that the statements, even though he may not have been apprised of the statute or the elements of the crime, were admissible and did provide evidence to satisfy the burden of the Attorney General for the deportation of that alien in Paskogon. So there's no provision for waiver or any kind of exemption under the admitting to having used drugs in Section 1182? The only time that it can be waived, I believe it's under 8 U.S.C.A. 1182, is when the amount of, it's only in the case of marijuana, and then it's only if there's less than 30 grams involved. That's the only exception which would allow the Attorney General to waive this exclusion under the statute. If any other drugs are involved, I don't see any basis under the statute for the Attorney General waiving the exclusion or the inadmissibility of the alien. That's the only exception that's permitted under the statute. All right. Thank you, Counsel. We're way over time. We appreciate the argument. You had 19 seconds left. Thank you very much. Thank you, Your Honor. On the issue of ineffective assistance of counsel, the petitioner did file a complaint with the Indiana Bar Association. The counsel who was representing the petitioner is not a member of the Hawaii Bar. And to my understanding, talking to my client, they are waiting to see what the outcome of the court will be before they take any further action. So you have the matter of Lozada in front of you, if you care to take advantage of it, if that works. Sure, yes. I have stated that in my brief also that we believe that counsel was ineffective. Thank you, Counsel. Thank you.
judges: Trott Wardlaw W. Fletcher